876 So.2d 117 (2004)
Melvin WILLIAMS
v.
SEWERAGE AND WATER BOARD.
No. 2004-CA-0025.
Court of Appeal of Louisiana, Fourth Circuit.
May 19, 2004.
*118 Desiree C. Calvin, New Orleans, LA, for Plaintiff/Appellant.
Brian A. Ferrara, General Counsel, Gerard M. Victor, Deputy Special Counsel, John D. Lambert, Jr., Special Counsel, Sewerage & Water Board of New Orleans, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge DENNIS R. BAGNERIS, SR., Judge MICHAEL E. KIRBY, Judge EDWIN A. LOMBARD).
MICHAEL E. KIRBY, Judge.

FACTS AND PROCEDURAL HISTORY
The Appellant, Melvin Williams, urges this Court to reverse the New Orleans Civil Service Commission's dismissal of his appeal of his termination from employment with the Sewage and Water Board for the City of New Orleans ("Appointing Authority"). The Appellant worked as a Utilities Plant Steamfitter, with permanent status, having been hired by the Appointing Authority on September 18, 1996, and promoted to his current class on December 16, 1993. The Appellant was involved in a physical altercation with a co-worker on November 18, 2002, and he was suspended. On November 26, 2002, a Pre-Termination Hearing was held, which the Appellant did not attend. In a disciplinary letter, dated December 2, 2002, the Appellant was notified that he was terminated effective December 6, 2002.
On December 12, 2002, the Appellant appealed his termination to the Commission. A hearing officer was appointed, and a hearing was held on March 12, 2003. The Appointing Authority called Todd Hatheway, the Appellant's supervisor, and *119 Broderick Williams, the co-worker involved in the altercation, witnesses. The Appellant represented himself at the hearing, testifying on his behalf and calling Gary Shirley, a co-worker, as his only other witness.

Facts Relevant to the Loudermill Issues
During Hatheway's testimony, the hearing officer noted what appeared to be a Loudermill[1] problem because the Appellant may not have received timely notice of the pre-termination hearing. The Notice of Pre-Termination Hearing ("Notice") was introduced into evidence. As a preliminary matter, several typographical errors in the Notice were pointed out during Hatheway's testimony: the date of the incident was incorrectly listed as November 19, 2002; and the letter accompanying the Notice was incorrectly dated August 23, 2002. Hatheway testified that the Notice was sent by certified mail on November 19, 2002, based on the certification clause in the Notice, as well as by regular mail the same day. The return receipt for the certified mail, however, was not produced or entered into evidence.
The Appellant interrupted the direct examination of Hatheway and stated that the Appellant's wife signed for the certified letter on November 29, 2002, three days after the pre-termination hearing. The Appointing Authority continued its direct examination of Hatheway and attempted to resolve the Loudermill problem. Hatheway testified that he verbally offered the Appellant a new hearing date but that the Appellant declined. The Appellant again interrupted the direct examination and attempted to argue that he did not decline the new hearing. The hearing officer reminded the Appellant that it was not yet his turn to present evidence.
During the presentation of his case, the Appellant introduced a letter from the post office, which stated that the mail was running late the week of November 29, 2002. The hearing officer commented that "[t]he mail is running late all the time with this new post office." The Appellant testified that upon receipt of the termination letter, he attempted to contact Hatheway but was told that he was on vacation. The Appellant testified that he then contacted members of the pre-termination hearing board to notify them of the late notice and to request a new hearing. The Appellant testified that someone named Charles McClendon made phone calls on behalf of the Appellant and told the Appellant that a new hearing date would be sent to him.[2] In addition, the Appellant testified that he spoke with Hatheway after he returned from vacation and was told that a new hearing date would be sent to him.
The Appellant testified that on December 12, 2002, he received a termination letter instead of the new hearing date. The termination letter, dated December 2, 2002, and postmarked December 9, 2002, was entered into evidence. The termination letter stated that the Appellant was terminated because "Employee did not attend hearing of 11/26/02. Therefore the recommendation for termination from the Sewage and Water Board stands."

*120 Facts Relevant to Merits of the Case
Hatheway testified that he instructed Broderick Williams[3] ("Broderick"), a co-worker of the Appellant, to locate the Appellant and work with him to repair a boiler. The co-worker returned to Hatheway with injuries to his face and reported that the Appellant had refused to work with him and had struck him, causing the injuries to his face. Hatheway also testified that he had counseled the Appellant previously about his behavior and the zero tolerance policy regarding workplace violence.
Broderick testified that he was instructed by Hatheway to locate the Appellant and to work with him to "change some equipment." Broderick testified that he located the Appellant in a small room with several other men and repeated Hatheway's instructions while standing in the doorway. Broderick testified that the Appellant told him "he didn't want to hear that from me," and Broderick stated: "And the next thing I know, he come across and punched me in my mouth right here (indicating) and pushed me down and started standing over me and hitting me." Broderick further testified that he did not push or hit the Appellant and did not say anything threatening to him to provoke the attack. Broderick testified that two co-workers, George Clements and Albert Campbell, were also in the room during the altercation.
The Appellant called Albert Campbell as his first witness. Campbell testified as to what he observed on November 18, 2002, when Broderick entered the room, and stated:
Well, Broderick came in and said "Melvin, we've got a job to go do." Melvin said, "Okay, leave me alone." Broderick said, "Melvin, come on, let's go." Melvin said, "Leave me alone." He said the same thing again. Melvin jumped up, went to the door. I think he was turning to go out the door. Broderick was turning too. Melvin pushed him. Broderick hit him. Then they went to war.
The Appellant then called Gary Shirley to testify regarding what Broderick told him after the alternation with the Appellant, and stated:
I was at the  whatever happened was at the plant that morning. I told you  I mean, Broderick, when he passed I said, "I told you that big mouth of yours would get you in trouble yet." * * * But Broderick came in and told me, he said, "I tore Melvin ass up." I said, "What?" I said, "If you tore his ass up that means two people was fighting." So I said, "If two people's fighting, both of you all should have got the same discipline." And he said that was it.
The Appellant then called himself as a witness and testified that he was in the small office in the pipe fitting room when Broderick entered. The Appellant testified that he and Broderick had been having problems, and verbal sparing ensued. The Appellant then testified that Broderick struck the first blow, forcing him to defend himself:
And then he kept talking so I said, "Man, I ain't got no time to play with you," and I got up to leave. He kind of held up by the door and he had his fist balled up, so I kind of pushed my way out of the door. And he went back and then he charged me back with a punch and knocked my glasses off.
*121 The Appellant testified that he and Broderick spoke with Hatheway after the altercation and that they both urged Hatheway to disregard the incident. The Appellant testified that Hatheway said he could not disregard the incident and sent both men for a drug test. According to the Appellant, Hatheway had him repeat his version of the facts a number of times and asked him numerous questions about the incident. The Appellant testified that Hatheway informed him at work the next day that he was suspended.

DISCUSSION
The Appellant argues that the Commission erred in dismissing his appeal of his termination. First he raises three issues regarding the alleged violation of his Loudermill due process rights: (1) that his pre-termination notice was untimely; (2) that the pre-termination notice did not constitute a sufficient explanation of the evidence against him; and (3) that he did not have an opportunity to be heard because he did not receive timely notice of the hearing. Second, he argues that he did not instigate the fight with his coworker.
The Appointing Authority argues that the Commission did not err in dismissing the Appellant's appeal because (1) the Appellant declined a new pre-termination hearing, thus eliminating any Loudermill issues; and (2) the Commission correctly found that the Appellant was the aggressor who struck the first blow, thus justifying his termination from employment.

Standard of Review
The Commission's factual determinations are reviewed by an appellate court under the clearly erroneous/ manifest error standard. Bannister v. Depart. of Streets, 95-0404 (La.1/16/96), 666 So.2d 641, 647. We may not disturb the Commission's findings of fact so long as they are reasonable, regardless of our own view of the evidence. Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993). In deciding whether the Commission's action was based on legal cause and commensurate with the situation, we should not modify the Commission's decision unless it is arbitrary, capricious, or characterized by abuse of discretion. Bannister, 666 So.2d 641, 647. "Arbitrary or capricious" means the absence of a rational basis for the action taken. Bannister, 666 So.2d 641, 647. Even when there is conflicting testimony, credibility evaluations cannot be disturbed on review. Moore v. New Orleans Police Dept., XXXX-XXXX, p. 8 (La.App. 4 Cir. 3/7/02), 813 So.2d 507, 511.

Loudermill Issues
Louisiana Constitution Article 10, § 8, provides in part that: "No person who has gained permanent status in classified state or city service shall be subject to disciplinary action except for cause expressed in writing." Rule IX, § 1.2 of the Rules of the Civil Service Commission for the City of New Orleans, states that "[i]n every case of termination of employment of a regular employee, the appointing authority shall conduct a pre-termination hearing as required by law and shall notify the employee of the disciplinary action being recommended prior to taking the action."
In Loudermill, the United States Supreme Court held:
The essential requirements of due process ... are notice and an opportunity to respond....The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story....To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.
*122 Under Loudermill, and in light of Rule IX, § 1.2, of the Rules of the Civil Service Commission, this Court has concluded that an employee is entitled to advance notice of the charges and evidence against him prior to his pre-termination hearing. Riggins v. Department of Sanitation, 617 So.2d 112, 113-114 (La.App. 4 Cir.1993). An explanation of the evidence is a prerequisite to the employee's pre-termination opportunity to present his side of the story. Webb v. Department of Safety & Permits, 543 So.2d 582, 583 (La.App. 4 Cir.1989). Notice of the charges should fully describe the conduct complained of and set forth the relevant dates and places and the names of witnesses against the employee to enable the employee to fully answer and prepare a defense. Webb, 543 So.2d 582, 584.
The key Loudermill issue was whether the Appellant received timely notice of the pre-termination hearing and whether he was afforded an opportunity to be heard. The Commission adopted and relied on the hearing examiner's report. The hearing examiner elicited testimony regarding the Notice and the Appellant's alleged request for a second pre-termination hearing.
Hatheway testified before the hearing examiner that the Appointing Authority accepted the Appellant's contention that he did not receive notice of the pre-termination hearing until three days after it was held. Hatheway testified further that the Appellant was offered a second pre-termination hearing, but the Appellant declined the offer. The hearing examiner found Hatheway to be more credible than the Appellant, who testified to a contrary set of facts on this issue. Any other alleged Loudermill issues, which were based on the typographical errors in the Notice, became moot. Therefore, based upon the record before us, we find that the Commission did not err in accepting the hearing examiner's determination that the Appellant declined a second pre-termination hearing and that, as a result, there were no Loudermill issues.

The Merits of the Case
At issue is whether the Appellant struck Broderick, thus violating the Appointing Authority's zero-tolerance policy regarding workplace violence and subjecting him to termination. The testimony on this issue was conflicting, and the hearing examiner and the Commission had to make credibility determinations.
We find that the Commission did not err in finding the testimony of Hatheway, Broderick, and Campbell more credible than that of the Appellant and that the Appellant was the aggressor who struck the first blow. Campbell, the Appellant's witness, testified clearly that the Appellant acted first by pushing Broderick. The Appellant also testified that he pushed his way past Broderick who was standing in the doorway. Only the Appellant testified that Broderick struck him first. At most, Shirley testified that Broderick admitted to fighting with the Appellant.
Therefore, we find that the Commission did not err in dismissing Melvin Williams' appeal, and we affirm the Commission's ruling.
AFFIRMED.
NOTES
[1] Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). As discussed infra, in a public employment context, the Supreme Court has held that the due process clause "requires `some kind of hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." Such employee has a right of notice and an opportunity to respond.
[2] No details are provided regarding the relationship of McClendon to the Appointing Authority.
[3] The parties noted that the Appellant and Broderick Williams share the same last name but are apparently just co-workers. As such, Broderick Williams will be referred to by his given name.