ROSEMARY LEDET, Judgé.
| j This is a Civil Service Commission of the City of New Orleans (“CSC”) case. *1255 The appellant, Melanie Davis, seeks review of the CSC’s denial of her appeal of the discipline imposed by the appointing authority, the New Orleans Recreation Department (“NORD”). For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On December 8, 2010, NORD issued a disciplinary letter to Ms. Davis, terminating her employment for the following reason:
On December 2, 2010, you physically assaulted another employee that resulted in the police being called out and charges of battery against you were filed with the New Orleans Police Department. Results from our internal investigation have proven that your unbecoming behavior was unprovoked.
On January 5, 2011, NORD rescinded the termination and imposed a 120-day emergency suspension without pay. On February 3, 2011, a pre-termination hearing was held. On February 9, 2011, NORD issued a letter of termination based on its determination that Ms. Davis was the aggressor in a physical altercation with a fellow NORD employee, Terresyna Lee. Upon receipt of each of the disciplinary letters, Ms. Davis filed appeals with the CSC. The CSC consolidated the appeals and appointed a hearing officer to receive testimony.
IpThe discipline in this case was based on a physical altercation that occurred on the job between Ms. Davis and a co-worker, Ms. Lee. The altercation occurred on the afternoon of December 2, 2010, outside the St. Bernard NORD facility (gym). Ms. Lee was standing outside the gym having a conversation with another NORD employee, Barbara Ganheart, when Ms. Davis exited the gym and approached them. Ms. Davis told Ms. Lee that she wanted to talk to her. Ms. Lee replied that she too wanted to talk to Ms. Davis. Ms. Davis then accused Ms. Lee of checking into her time (her employment time records). According to Ms. Lee and Ms. Ganheart, Ms. Davis was the aggressor in the ensuing altercation. According to Ms. Davis, Ms. Lee was the aggressor. The pertinent testimony at the hearing was as follows.
Ms. Lee testified that she previously was Ms. Davis’ supervisor. In that capacity, Ms. Lee informed Ms. Davis that she could not use her accrued sick leave, but rather had to use her annual leave, to take time off from her NORD job to perform her other job.[1] Her other job was as a referee for the National College Athletic Association (NCAA) at basketball games. Ms. Lee further testified that in 2008, Ms. Davis was transferred elsewhere in NORD. Continuing, Ms. Lee noted that since that time she neither was Ms. Davis’ supervisor nor had any involvement with Ms. Davis’ time sheet information. Nonetheless, Ms. Davis was under the impression that Ms. Lee was talking behind her back to her supervisors regarding her alleged improper use of sick leave.
|sAccording to Ms. Lee, on the day of the altercation, Ms. Davis confronted Ms. Lee “ranting and raving” about Ms. Lee’s alleged checking on Ms. Davis’ time records. Ms. Lee told Ms. Davis that she did not know what she was talking about and asked her to move from over in front of her. At that point, Ms. Davis punched her in the mouth and hit her several more times. Several people then ran outside and pulled them apart. Ms. Davis tried to *1256 come back at Ms. Lee, but she was pulled away again. According to Ms. Lee, she did nothing to instigate the altercation. She denied hitting or touching Ms. Davis.
After the altercation, Ms. Lee contacted NORD and then called 911. The police issued a citation to Ms. Davis for battery, but did not issue one to Ms. Lee. On the following day, Ms. Lee was treated at the emergency room. The injuries she sustained included bruising and swelling. She explained that she had a swollen lip and some “eggs” in the areas where Ms. Davis punched her. Ms. Lee acknowledged that Ms. Davis paid her medical bills, which were $552. Ms. Lee denied seeing Mr. Rudolph Brown, a former co-worker, outside at the time of the altercation. .
Ms. Lee’s testimony was corroborated by her co-worker, Ms. Ganheart. According to Ms. Ganheart, immediately before the altercation she and Ms. Lee were standing outside the gym discussing Ms. Ganheart’s new bracelet when Ms. Davis approached them. Ms. Davis and Ms. Lee took a few steps towards one another. They were “chest-to-ehest,” and Ms. Davis suddenly punched Ms. Lee in the face. She testified that Ms. Lee did nothing to provoke the altercation, and she denied seeing Ms. Lee place her hands on Ms. Davis. She characterized Ms. Davis as the aggressor. She denied seeing Mr. Brown in the area at the time of the altercation. Ms. Ganheart noted that the altercation occurred at about 3:30 p.m. on|4a weekday when children were present at the gym. She testified that the doors to the gym were open during the altercation. Ms. Ganheart indicated that she had known both Ms. Lee and Ms. Davis for about twenty years as co-workers and as friends and that she would not slant her testimony in favor of either of them.
Ms. Davis testified that moments before the altercation she and Mr. Brown had a conversation regarding a belt that she had in her vehicle for him. Ms. Davis explained that Mr. Brown had just had surgery and that the belt was for his belly. Ms. Davis went to retrieve her car keys, and Mr. Brown went outside the gym to smoke a cigarette. When she exited the gym, Mr. Brown was outside smoking a cigarette and Ms. Lee and Ms. Ganheart were outside engaging in a conversation. According to Ms. Davis, Ms. Lee started coming towards her as she was walking to her vehicle. At that point, they began fussing with each other. Ms. Ganheart told them to stop and put her hand between them. At that point, Ms. Davis testified that Ms. Lee pushed her. After being pushed, Ms. Davis punched Ms. Lee. After she punched Ms. Lee, Ms. Davis began to retreat, but Ms. Lee kept coming towards her. Ms. Lee was swinging and hitting as she kept moving towards Ms. Davis. Ms. Davis kept backing up, and in defending herself, fought back. Eventually, someone broke up the altercation.
Responding to NORD’s counsel’s questioning, Ms. Davis acknowledged that in a written statement that she prepared a half-hour after the incident, she stated that she pushed Ms. Lee and that they then started fighting.
Ms. Davis noted that she had known Ms. Lee for years and that until Ms. Lee became her supervisor sometime after Hurricane Katrina (after August 2005), she never had any problems with her. As noted, the dispute between them related to Ms. Lee questioning the leave time Ms. Davis took in order to perform her ^duties as a NCAA referee. Later, after Ms. Davis was no longer under Ms. Lee’s supervision, Ms. Davis claimed that she heard that Ms. Lee continued to question her leave time. Ms. Davis explained that she did not know she could not use her sick leave to referee the basketball games. *1257 Ms. Davis explained that she had never been disciplined for misuse of leave time or for any other reason during her employment with NORD.
Ms. Davis acknowledged that she received a municipal citation for battery as a result of the altercation.[2] Ms. Davis testified that she pled no contest to the municipal battery charge because she needed the matter quickly resolved. She explained that she needed to pass her yearly NCAA background check. Ms. Davis testified that she did not understand the procedure and that she was guided in entering a no contest plea by a court employee, who was also a referee. She believed that by pleading no contest, the matter would be removed from her record after she paid court costs. In the municipal court, she received a ninety day suspended sentence and was ordered to pay court costs and restitution in the amount of $552 (the amount of Ms. Lee’s medical expenses).
Mr. Brown, a former NORD employee, testified on Ms. Davis’ behalf. He stated that he was at the NORD facility (gym) at the time of the altercation. He explained that Ms. Davis informed him that she had some stuff in her car that he could rub on his leg for pain. Mr. Brown stepped outside to smoke a cigarette while Ms. Davis went to get her car keys. According to Mr. Brown, after Ms. Davis exited the facility, Ms. Lee bumped her body into Ms. Davis. When Ms. Davis asked what was wrong with Ms. Lee, Mr. Brown testified that Ms. Lee | (¡bumped into Ms. Davis a second time. Mr. Brown stated that Ms. Lee then bumped into Ms. Davis a third time, and Ms. Davis hit Ms. Lee. Mr. Brown stated that he was positive Ms. Lee bumped into Ms. Davis three times. Mr. Brown further stated that he had just been released from the hospital so he could not break up the altercation. Mr. Brown still further stated that another individual ran out of the gym and grabbed Ms. Davis. Ms. Lee grabbed Ms. Davis by the hair and hit her in the back. Mr. Brown testified that other people arrived and grabbed Ms. Lee. Mr. Brown stated that neither the police nor NORD asked him to give a statement.
Arnie Fielkow, then a New Orleans City Council member, testified on Ms. Davis’ behalf as a character witness. He denied any knowledge of the altercation. He testified that he knew Ms. Davis from her NORD employment and from basketball. He further testified that she was always respectful of the players and the spectators while performing her referee .duties.
Mr. Richard, NORD’s director, testified that he was responsible for supervising all NORD’s employees. Given that most of NORD’s programs are for youth, NORD employees are expected at all times to be role models. Both Ms. Lee and Ms. Davis were employed by NORD in management capacities. NORD began investigating the altercation immediately, and Ms. Lee was placed on leave with pay pending the investigation. NORD’s investigation revealed that the people present at the time of the altercation were Ms. Lee, Ms. Davis, and Ms. Ganheart. NORD’s investigation determined that Ms. Lee was the victim of an “unprovoked physical altercation between two management persons.” Ms. Lee was reinstated and Ms. Davis was disciplined (terminated). Mr. Richard noted that Ms. Davis had been an asset to the City and that he was shocked to learn of her actions. However, |7he stated that he determined termination was appropriate *1258 given that the attack was unprovoked by Ms. Lee. Mr. Richard explained that the decision to terminate her was made because this type of behavior was unacceptable. Mr. Richard stated that he did not want Ms. Davis back at NORD. He further stated that he would accept Ms. Davis back at NORD if he had to do so, but her abilities as a leader were tarnished. Mr. Richard noted that a physical altercation affects the efficiency of the operation by tarnishing the reputation of the leadership and in the way it affects morale.
After reviewing the transcript and evidence, the CSC issued a decision denying Ms. Davis’ appeal and thus upholding her termination. The CSC provided the following reasons for its decision:
The Appellant lost her temper and struck another employee with enough force to cause serious physical harm. While the Appellant may have felt provoked, her actions were not justified and her claim of self-defense is not credible. Ms. Lee never struck her and, given the Appellant’s superior size and strength, her assertion that she considered Ms. Lee a threat carries little weight. Moreover, the Appellant admitted in open court that she was guilty of the crime for which she was convicted. Finally, we agree with the Appointing Authority’s conclusion that the offense was serious enough to justify termination notwithstanding the Appellant’s otherwise clean employment record.
Thus, the CSC denied Ms. Davis’ appeal and upheld her termination. This appeal followed.

DISCUSSION

At the outset, we note that NORD raises a procedural objection to Ms. Davis’ appeal. NORD points out that Ms. Davis failed to comply with Uniform Rules of Louisiana Courts of Appeal, Rule 3-1.1, which provides:
Every application for appeal from a final decision of any administrative body shall be filed with the appropriate administrative body in writing as required by law and shall include an assignment of Rerrors, which shall set out separately and particularly each error asserted and a designation of the portions of the record desired to be incorporated into the transcript.
NORD thus contends that Ms. Davis’ entire appeal should be dismissed as untimely. In support, NORD cites IT Corp. v. Commission on Ethics for Public Employees, 464 So.2d 284, 292 (La.1985), which held that the failure to assert an assignment of error in the notice of appeal precluded the appellant from making that argument on appeal.
Although Uniform Rule 3-1.1 fails to provide a penalty for its violation, “[a]n assignment of error is not necessary in any appeal.” La.C.C.P. art. 2129. The Louisiana Constitution provides that the appellate jurisdiction of a court of appeal in civil matters extends to law and facts. La. Const, art. 5, § 10(A) and (B). Further, another uniform rule provides:
The scope of review in all cases within the appellate and supervisory jurisdiction of the Courts of Appeal shall be as provided by LSA-Const. art. 5, § 10(B), and as otherwise provided by law. The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications of error, unless the interest of justice clearly requires otherwise.
Uniform Rules of Louisiana Courts of Appeal, Rule 1-3. Based on the above constitutional and codal authority, the Louisiana Supreme Court has held that an appellate court has the authority to consider an issue despite the lack of an assignment of *1259 error. Wooley v. Lucksinger, 09-0571, 09-0584-0586, p. 68 (La.4/1/11), 61 So.3d 507, 563 (citing Nicholas v. Allstate Ins. Co., 99-2522, pp. 7-8 (La.8/31/00), 765 So.2d 1017, 1023). In this case, NORD terminated Ms. Davis from her employment. The interest of justice requires that this court address her assignments of error. See also Regis v. Department of Police, 12-1043, p. 9 (La.App. 4 Cir. 12/12/12), 107 So.3d 790, 799, n. 4, 2012 WL 6218195 (rejecting a similar argument).
|nThe governing standards that apply in this case are well-settled. Enumerating those standards, this court in Regis, 12-1043 at pp. 2-4, 107 So.3d at 790 (citing Harris v. Department of Fire, 08-0514, pp. 10-11 (La.App. 4 Cir. 7/16/08), 990 So.2d 54, 61-62), recently noted:
• An employer cannot subject a permanent classified civil service employee to disciplinary action except for cause expressed in writing. La. Const. Art. X, § 8(A); Walters v. Dep’t of Police, 454 So.2d 106, 112 (La.1984).
• Cause for discipline of an employee exists whenever the employee’s conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino v. Dep’t of Police, 558 So.2d 1311, 1315 (La.App. 4th Cir.1990).
• “The appointing authority is charged with the operation of his or her department and it is within his or her discretion to discipline an employee for sufficient cause.” Whitaker v. New Orleans Police Dep’t, 03-0512, p. 5 (La.App. 4 Cir. 9/17/03), 863 So.2d 572, 575.
• The employee may appeal from such a disciplinary action to the Commission. On appeal, the Commission has a duty to decide independently from the facts presented whether the appointing authority had good and lawful cause for taking the disciplinary action and, if so, whether the punishment imposed was commensurate with the infraction. Walters, 454 So.2d at 113.
• “The authority to reduce a penalty can only be exercised if there is insufficient cause.” Whitaker, 03-0512 at p. 4, 863 So.2d at 575 (citing Branighan v. Dep’t of Police, 362 So.2d 1221, 1223 (La.App. 4 Cir.1978)). Further, a legal basis for any change in a disciplinary action can only be that sufficient cause for the action was not shown by the appointing authority. Branighan, 362 So.2d at 1221. The Commission may not merely substitute its judgment for the appointing authority’s judgment. Whitaker, 03-0512 at p. 5, 863 So.2d at 576.
• On appeal, the standard of review is established by the constitutional rule that the Commission’s decision is subject to review on any question of law or fact. La. Const, art. X, § 12. A multifaceted standard of appellate review applies. First, as in other civil matters, deference must be given to the Commission’s factual findings, which should not be disturbed unless manifestly erroneous or clearly wrong. Second, in evaluating the Commission’s determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the appellate court should not modify the | mCommission’s decision unless it is arbitrary, capricious, or characterized by an abuse of discretion. Bannister, 95-404 at p. 8, 666 So.2d at 647. Arbitrary or capricious means there is no rational basis for the action taken by the Commission. Id.
Id.; Williams v. Department of Police, 08-0465, pp. 6-7 (La.App. 4 Cir. 10/22/08), 996 So.2d 1142, 1145-46 (citing Harris, supra); Bankston v. Department of Fire, 09-1016, p. 7 (La.App. 4 Cir. 11/18/09), 26 So.3d 815, 821-22 (citing Williams, supra (citing Harris, supra)).
*1260 Ms. Davis’ first assignment of error is that the CSC’s decision was arbitrary, capricious, or an abuse of discretion. She contends that although the CSC found all the witnesses credible, it did not believe that she had the right to defend herself. Ms. Davis points out that several witnesses testified that Ms. Lee bumped into her several times before Ms. Davis punched Ms. Lee. She contends that this evidence regarding the bumping initiated by Ms. Lee justified her striking Ms. Lee to defend herself against this repeated battery on her person. She submits that she was not the aggressor; rather, she was defending herself from Ms. Lee.
The CSC concluded that Ms. Ganheart’s testimony corroborated Ms. Lee’s testimony. Both Ms. Lee and Ms. Ganheart testified that Ms. Davis punched Ms. Lee without any provocation on the part of Ms. Lee. Mr. Brown testified that Ms. Lee bumped into Ms. Davis three times. On the other hand, Ms. Davis testified that Ms. Lee pushed her once and then Ms. Davis punched Ms. Lee. Furthermore, Ms. Ganheart gave a statement to both the police and NORD. Although Mr. Brown was aware that the police and NORD were questioning the incident, Mr. Brown did not volunteer to provide a statement to either the police or NORD. Indeed, Mr. Brown did not provide a statement until Ms. Davis asked for a statement.
In Where there is conflicting testimony, credibility evaluations cannot be disturbed on review. Williams v. Sewerage & Water Bd., 04-0025, p. 7 (La.App. 4 Cir. 5/19/04), 876 So.2d 117, 121 (citing Moore v. New Orleans Police Dep’t, 01-0174, p. 8 (La.App. 4 Cir. 3/7/02), 813 So.2d 507, 511). Unless clearly contrary to the evidence, credibility determinations are within the discretion of the trier of fact and will not be disturbed by the reviewing court. State v. Marshall, 04-3139, p. 9 (La.11/29/06), 943 So.2d 362, 369 (citing State v. Vessell, 450 So.2d 938, 943 (La.1984)).
As the trier of fact, the CSC possessed the discretion to make credibility determinations. Contrary to Ms. Davis’ contention, the CSC did not state that Ms. Davis did not have the right to defend herself. Rather, the CSC determined that Ms. Davis’ claim of self-defense was not credible. The evidence is not clearly contrary to the CSC’s finding. Considering the variations between Ms. Davis’ and Mr. Brown’s testimony coupled with the corroboration between Ms. Lee’s and Ms. Ganheart’s testimony, there is a rational basis for the CSC’s finding. This assignment of error is not persuasive.
Ms. Davis next assignment of error is that the CSC erred in accepting a plea of nolo contendere as an admission of guilt. Generally, a plea of nolo contendere is not admissible in a civil case. La. C.E. art. 410(A)(2).[3] At the hearing, Ms. Davis identified the citation that she received as a result of the altercation on December 2, 2010, and the chronology report from the New Orleans Municipal | ¶ ¡¡Court case. Ms. Davis’ counsel failed to object to the introduction of these documents or to any testimony regarding the New Orleans Municipal Court case. Failure to object to the introduction of evidence constitutes a waiver of the right to object to the introduction of evidence on appeal. LaHaye v. Allstate Ins. Co., 570 So.2d 460, 466 (La.App. 3rd *1261 Cir.l990)(noting that “[t]o preserve an evi-dentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony, and state the reasons for the objection”); see also Vestal v. Kirkland, 11-0419, 11-0420, 11-0421 (La.App. 3 Cir. 11/23/11), 81 So.3d 748; Ewing v. State ex rel. Dep’t of Transp. and Dev., 99-1556 (La.App. 3 Cir. 3/15/00), 757 So.2d 843; Himel v. State ex rel. Dep’t of Transp. and Dev., 04-0274 (La.App. 5 Cir. 10/12/04), 887 So.2d 131. This assignment of error is thus unpersuasive.
Ms. Davis’ third and final assignment of error is that the CSC erred in finding that the punishment was commensurate with the offense. In support, Ms. Davis points out that she presented testimony of her good character, including a character witness, and testified that she had never been disciplined before in her NORD employment. In further support of her argument that the punishment was not commensurate with the offense, Ms. Davis cited an unpublished decision of this court. Daggs v. Dep’t of Police, 08-0918 (La.App. 4 Cir. 11/12/08), 2008 WL 8921978(unpub.). In that case, the CSC determined that Officer Daggs caused an altercation with a co-worker. Daggs, 08-0918 at p. 5. The CSC denied the appeal, upholding an eight-day suspension (three days of the suspension were for violating instructions from authoritative sources and five days were for violating internal rules regarding professionalism). Finding that the CSC was not manifestly erroneous in finding h.othat Officer Daggs caused the altercation and upholding the suspension, this court affirmed. Daggs, 08-0918 at p. 6.
In contrast to the Daggs case, this court in Williams v. Sewerage & Water Bd., 04-0025 (La.App. 4 Cir. 5/19/04), 876 So.2d 117, affirmed the CSC’s decision upholding the termination of an employee for engaging in a physical altercation with a coworker. Similar to the instant case, the testimony in Williams conflicted as to whether the co-worker or the terminated employee caused the altercation. This court found that the CSC made credibility determinations and affirmed the decision of the CSC denying Mr. Williams’ appeal of his termination. Williams, 04-0025, p. 9, 876 So.2d at 122.
In the instant case, the CSC determined that Ms. Davis’ attack on Ms. Lee was unprovoked and that it resulted in serious physical harm. Ms. Davis argued that a swollen lip and some “eggs” are not serious physical harm. She further argued that there was no medical evidence to support Ms. Lee’s claims of personal injury. However, Ms. Davis acknowledged paying restitution in the amount of $552 — the amount of Ms. Lee’s medical bills — as part of the sentence she received in municipal court.
The CSC further determined that the offense was serious enough to warrant termination in spite of Ms. Davis’ otherwise unblemished employment record. Given the circumstances of this case, we cannot conclude that the discipline imposed was not commensurate with the offense.

DECREE

For the foregoing reasons, the decision of the CSC is affirmed.
AFFIRMED

. As the CSC pointed out in its decision, "[t]he primary distinction between annual leave and sick leave is that upon separation of employment any accrued annual leave is paid to a City employee in full, while accrued sick leave is paid in part.”

. Ms. Davis indicated that she was unaware that she could have asked to have charges pressed against Ms. Lee.

. La. C.E. art. 410(A)(2) provides:
A. General rule. Except as otherwise provided in this Article, evidence of the following is not, in any civil or criminal proceeding, admissible against the party who made the plea or was a participant in the plea discussions:
[[Image here]]
(2) In a civil case, a plea of nolo contende-re.