405 So.2d 1209 (1981)
Terrence E. YOUNG
v.
DEPARTMENT OF HEALTH AND HUMAN RESOURCES, Lallie Kemp Charity Hospital.
No. 14333.
Court of Appeal of Louisiana, First Circuit.
October 12, 1981.
Writ Denied December 14, 1981.
*1210 Archie C. Tatford, Jr., New Orleans, for appellant.
Donald Puckett, Staff Atty., Dept. of Health and Human Resources, Office of the Gen. Counsel, Baton Rouge, for appellee.
Laura Denson Holmes, Civ. Service Legal Counsel, Dept. of State Civ. Service, Baton Rouge, for George Hamner, Director, Dept. of State Civ. Service.
Before COVINGTON, COLE and WATKINS, JJ.
COLE, Judge.
Appellant Terrence E. Young appeals his dismissal from his position as Nurse Anesthetist III at Lallie Kemp Charity Hospital. Mr. Young raises several issues on appeal. We will divide the issues into two basic categories: one category raises questions concerning the sufficiency of the evidence adduced at the hearing; the other category deals with various procedural matters.
Mr. Young was informed of his suspension from his position in a letter signed by Richard L. Burge, Superintendent of appellee hospital, dated September 20, 1978. In a letter dated October 10, 1978, Mr. Young was informed he was dismissed from his employment as of October 13, 1978. The dismissal letter charged Mr. Young with six specific violations of his duties and contained a seventh charge alleging he had *1211 failed "to meet the basic standards and minimum requirements of performance of a nurse anesthetist...."
At the lengthy hearing many witnesses testified as to the facts surrounding the various incidents. Several experts were called by each side to give their opinion as to the responsibility of the nurse anesthetist and to testify on other medical matters.
The Commission issued an opinion on November 10, 1980, finding sufficient proof of charges 1, 2 and 3[1] and denying Mr. Young's appeal of his dismissal. Mr. Young then filed this appeal.
We will consider first appellant's argument that the evidence did not support the various charges. Charge 1 reads as follows:
"Failure to properly monitor the vital signs, specifically the pulse and blood pressure of the patient identified in Chart # 118728,[2] on or about the 25th day of August, 1978, at Lallie Kemp Charity Hospital and the failure to accurately report the findings of any monitoring of those signs by you to the surgeons in charge of the surgical procedure, or another medical doctor on that date at that place."
Several persons testified at the hearing concerning the events surrounding this particular surgical procedure (an amputation of a gangrenous leg). The anesthesia records indicated the patient's blood press was 100 systolic over 60 diastolic prior to the operation. A spinal anesthetic was given at 8:40 p.m. and the blood pressure dropped to 80 over 60. Dr. Richard Davies, the surgeon in charge, testified he then ordered Mr. Young to administer fluids to the patient and the blood pressure was brought up to 90 over 60. The chart showed after surgery commenced the pressure then dropped to 68 over 48 and remained at this level. Approximately fifteen minutes later a nurse notified Dr. Davies that the patient's pupils were fixed and dilated and that the patient did not seem to be breathing. Dr. Davies, almost through with the surgery, came to the head of the table and tried to resuscitate the patient. In spite of several efforts to revitalize the patient, including heart massage, insertion of an endotracheal tube, and the administration of various drugs, the patient was pronounced dead at 10:00 p.m.
There are two factual disputes involved in charge 1. The first is whether or not Mr. Young accurately reported the blood pressures to Dr. Davies. Mr. Young testified his general procedure was to always inform the surgeon of the patient's blood pressure, particularly when the patient was having difficulty. Although he does not specifically remember doing so (because of the passage of almost a year and a half between the incident and the hearing) he stated he was sure he would have informed Dr. Davies of the extremely low blood pressure. To the contrary, Dr. Davies insisted repeatedly Mr. Young did not report the blood pressures as they appeared on the chart. He stated he would not have continued to operate if he had known the pressure was as low as 80 over 60 and certainly would not have proceeded on this patient with a pressure of 68 over 48. He stated the operation could have been postponed for a week or more.
The other factual matter in dispute concerns the administration of fluids through an intravenous drip (hereinafter referred to as an "i. v."). On the one hand, Dr. Davies testified he ordered Mr. Young to increase the fluids after the administration of the spinal when it became apparent that the blood pressure had dropped, and instructed Mr. Young to run the fluids "wide open." At some point in the procedure Dr. Davies noted the drip was not running full force and repeated his instructions to Mr. Young. Mr. Young told Dr. Davies he was worried about overloading the patient with fluids. Dr. Davies testified Mr. Young never complied fully with his request.
*1212 Mr. Young, on the other hand, testified Dr. Davies had misunderstood what he saw when he observed that the drip had slowed or stopped. Mr. Young explained that when he added medications through the i. v. or when he needed to change the i. v. bag he would turn off the i. v. momentarily, or manually "pinch" the tube to momentarily stop the flow. He felt this as the best way to allow the drug or the new fluid to reach the patient quickly. Mr. Young did admit the i. v. was not running wide open the whole time because he felt that to give the patient too much fluid would have been as harmful as giving the patient too little fluid.
Various other witnesses testified as to the facts. Delores Briggs, a licensed practical nurse, testified she assisted Mr. Young by attempting to get a blood pressure reading on the patient. Although she tried several times she could not hear anything with her instrument and therefore could not get a reading. She informed Mr. Young of this fact. Young attempted to get a reading himself and then called out various readings to Dr. Davies. Dr. Davies, apparently aware there was some trouble with the blood pressure, asked if anyone could give him a reading. Dr. Alwood Rice, the assisting intern on the case, testified Young announced several times he was having trouble getting a reading. In spite of this problem Mr. Young assured the surgeons the patient was "doing fine." Dr. Rice did not recall ever hearing that the blood pressure was 68 over 48.
The crux of the matter is obviously one of credibility. Dr. Davies and Mr. Young offered differing versions of what happened in the operating room. As always, the trier of fact is granted a great deal of discretion in matters of credibility of witnesses. McMillan v. Travelers Ins. Co., 371 So.2d 1213 (La.App. 1st Cir. 1979). This is so because it is the trier of fact who is able to observe first hand the demeanor and character of the witnesses, while this court is limited to a review of the cold record. Although this is a review of a Civil Service Commission hearing rather than of a trial, we see no reason to deviate from the well established rule that unless the trier of fact was clearly wrong, we will not disturb his findings of fact, particularly as to credibility of the witnesses. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). After carefully examining this lengthy record we find no manifest error, therefore we agree with the Commission's findings of fact as to charge 1.
Now that we have accepted the evidence as supporting charge 1 we must determine whether or not the grounds mentioned in that charge are sufficient grounds for dismissal. In other words, conceding Mr. Young failed to accurately report the blood pressure and adequately administer the fluids pursuant to the surgeon's orders, was this a violation of his professional duty as a nurse anesthetist?
Dr. John Adriani, a medical doctor specializing in anesthesiology, was presented by the appellee as an expert in anesthesiology, nurse anesthesia, and pharmacology. He stated it was most certainly the nurse anesthetist's duty to follow the surgeon's orders as to the amount of fluids to be given. He further stated the nurse anesthetist is to keep the surgeon informed of the blood pressure of the patient. He noted that if the nurse does so inform the surgeon, his or her duty is then satisfied because it is the surgeon's responsibility to take any necessary corrective actions.
Other experts called by the appellee were Faye Hornsby and Diana DeMars, both nurse anesthetists at Lallie Kemp Hospital. They testified as to the acceptable standards at the particular institution. Both testified that as nurse anesthetists they would not challenge or deviate from the surgeon's orders concerning fluids. Both stated they would report immediately a sharp drop in blood pressure to the surgeon in charge.
We find it apparent from the above testimony that Mr. Young did violate his duties as a nurse anesthetist in acting or failing to act as he did. We therefore affirm the commission's findings as to charge 1.
*1213 Charge 2 reads as follows:
"Failure to properly anesthetize patient identified in Chart # 24671, to a sufficient depth on or about the 7th day of August 1978, at Lallie Kemp Charity Hospital."
Dr. Davies testified the patient, who was undergoing surgery on three hemorrhoids, thrashed about for fifteen minutes toward the end of the procedure. He state the movement was so severe the patient had to be physically restrained. He stated he was not able to satisfactorily complete the surgery, leaving the third hemorrhoid not completely attended to, and that the movement prolonged the surgery beyond the usual time period. He testified he gave verbal instructions to Mr. Young to increase the anesthesia. The anesthesia record showed that Ethrane was given first at concentrations of 2.1% and then lowered to 1.6%. The amount was not increased during the surgery.
The patient's chart did not reflect any problems with the anesthetic. When asked why there was no written comment on the patient's chart, Dr. Davies responded he felt it inappropriate to note problems of the nurse anesthetist on the patient's chart, particularly since there were no adverse effects to the patient. He also mentioned he refrained from doing so because of possible "medico-legal implications."
The anesthetic problem was noted in a postoperative diagnosis which reads as follows:
"The anesthesia became light during the closure of the skin incision over the hemorrhoidal at the 3:00 position and patient had to be forceably (sic) restrained in order for the operation to be finished."
The statement was signed by Dr. Rice, the intern assisting in the operation.
Mr. Young testified initially he remembered no specific details about the case. When questioned further he stated he did recall some movement but not nearly to the extent as described by Dr. Davies. He stated he would surely have remembered a patient "thrashing around" for fifteen minutes. His records indicated to him that the patient may have moved during the last three or four minutes of surgery.
Glenda McKean, the operating room supervisor and a registered nurse, testified she recalled the patient moving five or ten minutes before the end of the surgery. She stated the patient moved to a great extent, had to be restrained and his legs were removed from their raised position. She admitted it was not uncommon for patients to move, particularly at the end of an operation.
Dr. Rice testified the patient started kicking during the procedure and several people had to restrain him. He stated it was not unusual for a patient to "become light" for 15 to 30 seconds but it was unusual for the patient to remain light for several minutes, as occurred in this case. He stated the operation had to be interrupted for 2 to 3 minutes because of the excessive movement. He recalls Dr. Davies ordering the anesthetic to be increased and remembers the patient quieting down some but stated the patient never went "completely back under."
Although we realize there are inconsistencies in the above testimonies concerning the duration of the movement, we find no error in the Commission's finding that the patient did indeed move to an excessive extent, due to Mr. Young's failure to properly anesthetize the patient. Fortunately, the patient seems to have suffered no permanent effects from this error, but Mr. Young's actions are a breach of his professional duty nonetheless. Dr. Adriani testified that it was indeed poor anesthetic practice to allow a patient to become so light that he thrashed about, even if it occurred near the end of surgery. The condition could have been easily corrected by the administration of more Anectine (which paralyzes the muscles almost instantly) or more Ethrane (which creates a deeper level of anesthesia).
The two nurse anesthetists mentioned above, Faye Hornsby and Diana DeMars, testified again concerning the acceptable standards at Lallie Kemp Hospital. Both stated that movement indicated the anesthesia *1214 was not deep enough. Nurse DeMars stated she would administer Anectine which would immediately paralyze the patient and then administer Ethrane, which would increase the level of anesthesia.
Mr. Young testified further that had he seen movement he would have increased the Anectine and then the Ethrane. He said his chart showed the operation was finished at 2:35 and the patient was not removed from the operating table until 2:45, which indicated the patient was in a quite deep anesthetic state at that point. He does not recall the patient having to be forcibly restrained.
Dr. William Max Yarbrough, an expert in anesthesiology, testified on Mr. Young's behalf that there was nothing in the anesthesia record to indicate that the patient became light. He stated he always allowed his patients to lighten up as he closed the skin. He agreed that any movement severe enough to require physical restraint of the patient would not be acceptable, even if it occurred at the end of the surgery.
Considering the foregoing testimony concerning facts and the expert opinions, we again concur with the conclusions of the Commission. Accepting as fact that the patient did move to the extent that he required physical restraint, (although it is uncertain as to the length of the movement), we find Mr. Young violated his professional duties as a nurse anesthetist. Although all witnesses agreed slight movement toward the end of surgery was not uncommon, they also agreed extensive movement such as to require physical restraint was never acceptable, no matter in what stage of the surgery it occurred. Therefore we affirm the findings as to charge 2.
Charge 3 reads as follows:
"Failure to properly anesthetize patient identified in Chart # 99307, to a sufficient depth on or about the 18th day of August, 1978, at Lallie Kemp Charity Hospital."
The evidence offered to support this charge consisted mainly of testimony by Dr. Davies. He stated there was much movement during the first sixty minutes of the operations so that the legs moved and the abdominal muscles contracted. He stated he pointed this out to Mr. Young and after about sixty minutes the movement subsided. There is no mention of the movement in the patient's chart or in the postoperative note. No other witnesses were called to verify Dr. Davies' version of the incident.
Mr. Young testified he was unable to recall any specifics concerning this operation.
We conclude the appointing authority failed to carry its burden of proof as to this charge. We note the surgeon accomplished three separate procedures during this surgery. He performed a cholecystectomy, vagotomy and a pyloroplasty.[3] Dr. Yarbrough (who testified on behalf of Mr. Young) observed it was odd so much could be accomplished if the patient moved continually for sixty minutes. We are also impressed by the fact that there were no other witnesses to confirm Dr. Davies' version, nor was there any written note of the difficulty anywhere in the patient's records. Common sense dictates that if a patient had actually moved for sixty minutes this would be a significant intrusion upon the operation so as to impede the surgeon from adequately completing the procedure. At the very least, one would expect some note to be made of this problem.
Because we hold the appointing authority has failed to prove this charge, we reverse the Commission's findings as to charge 3. We note, however, the reversal of this charge does not change the overall result of the hearing. We find charges 1 and 2 to be sufficiently serious so as to justify Mr. Young's dismissal.
In addition to his complaints concerning the evidence supporting the substantive charges, the appellant raises several procedural *1215 issues. Concerning the expert witnesses the appellant urges two errors. First, he contends the Commission erred in allowing Dr. John Adriani to remain in the hearing room while other fact witnesses testified. Appellant insists this unduly prejudiced Dr. Adriani's testimony. The Commission noted there is no civil service rule governing this matter but looked to La. Code Civ. P. art. 1631 for guidance. That article states a civil tribunal may except any witness from a sequestration order if such action would be in the interest of justice. Comment (c) under the article states in pertinent part:
"Except in most unusual situations, persons called to testify as expert witnesses are not excluded from the courtroom during the trial of the case. Since they are not called to testify to the facts of the case, but only to give their expert opinions to hypothetical facts, there would seldom be either reason or necessity for excluding them."
It has been observed by the Third Circuit that it is quite often impractical to sequester expert witnesses because to do so may require repetition of the various facts already placed into evidence by other witnesses. Hopkins v. Department of Highways, 350 So.2d 1271 (La.App. 3d Cir. 1977); 364 So.2d 616 (La.App. 3d Cir. 1978), appeal after remand on other issues. The court noted the exception is when an expert is also used as a fact witness and there is danger he will be influenced by other testimony. We have read the record carefully and conclude that since Dr. Adriani was called upon only to give his opinion, rather than to relate facts, there was no prejudice in allowing him to remain in the hearing room.
Appellant's second argument concerning the expert witnesses is that the Commission erred in allowing nurse anesthetists DeMars and Hornsby to testify as experts in the field of nurse anesthesia. (Mr. Young's counsel objected accordingly at trial.) We find no error here. It is true that these witnesses did not hold the highest degree available in their field (they both had bachelors of science degrees in nursing with specialized training in nurse anesthesia), but we feel this should go to the weight of their testimony rather than the admissibility. Their testimony was not offered as that of eminent authorities on nurse anesthesia, but was offered to show what professional standards were acceptable and used at Lallie Kemp hospital. For this purpose they were adequately qualified.
Appellant raises two issues concerning the language of the charges. He claims the charges were not sufficiently detailed, and the appointing authority enlarged and expanded upon the written charges at the hearing. We find no merit in the first argument. Charge 1 specifically states Mr. Young was accused of failure to properly monitor the vital signs, specifically the pulse and blood pressure. The patient was identified by chart number and the date and place of the alleged violation was given. This information was adequate to inform the appellant of the charges against him. Charge 2 is also adequately specific in that it informed Mr. Young he was being charged with failure to properly anesthetize a certain patient to a sufficient depth again giving the date and place of the alleged incident.
We also find no merit in the appellant's contention that the Commission enlarged upon the charges at the hearing. Appellant seems to be arguing that there was an enlargement of the charges simply because the matter was developed in greater detail at the hearing than was stated in the dismissal letter. This situation is a natural occurrence and cannot be labeled as "enlarging the charges." Certainly the appointing authority is not required to list every minute detail of the charge in the dismissal letter. The letter adequately informed Mr. Young of the offenses for which he was charged. The evidence at the hearing did nothing more than develop (rather than enlarge upon) these charges.
Finally, appellant contends he was unduly prejudiced in that he was not able to review *1216 the medical records until eight months had elapsed from the incidents and he was not provided with copies of the records until after the hearing. We note initially that civil service rule 13.33 states that pretrial discovery proceedings shall not be recognized by the Commission, therefore we are not dealing with the usual civil discovery procedure.
We find appellant was not unduly prejudiced by the above facts. We reach this conclusion because we do not decide this case based on appellant's lack of memory as to details, i. e., we are not "holding it against" the appellant that he could not remember some of the charges with much detail. To the contrary, we have based our ultimate conclusion (that he failed to properly monitor one patient's blood pressure and failed to properly anesthetize another patient) on the affirmative testimony of Dr. Davies, other witnesses, and the evidence as reflected in the medical records. We feel this is adequate proof of the charges. Certainly it would be prejudicial to Mr. Young if we were simply to say, "Since he cannot recall the details of the incident we will assume he acted as accused." But this is not the case. Indeed, we have reversed the decision in charge 3 precisely because of this problem. There was very little affirmative evidence on this matter and Mr. Young was not able to offer any independent recall of the event. Under those circumstances it is only fair the charge be dismissed.
Therefore, we do not find merit in any of appellant's arguments relating to procedural problems. We find the hearing was conducted with a great deal of propriety and all parties were given ample opportunity to tell their side of the story. We therefore affirm the decision of the Commission as to charges 1 and 2 and reverse the decision as to charge 3. The overall result of the hearing remains the same, and we quote from the opinion of the Commission.
"The Commission therefore concludes the conduct of the appellant as established by the appointing authority was grossly detrimental to the efficiency of the Lallie Kemp Charity Hospital and to the well-being of the patients whose care had been entrusted to that institution and accordingly, there was cause for the appellant's separation."
We affirm the denial of the appeal. Costs are to be paid by appellant.
AFFIRMED.
NOTES
[1] The opinion noted that charge 4 was defective for stating the wrong date, charge 7 was defective for vagueness, and charges 5 and 6 had been voluntarily dismissed by the appointing authority at the outset of the hearing.
[2] In order to protect the confidentiality of the information the patients' names were not used in these proceedings.
[3] These medical terms refer respectively to the removal of the gall bladder, an interruption of the impulses carried by the vagus nerves and an operation which relieves gastric emptying by enlarging the pyloric canal.