HIGGINBOTHAM, J.
| 2This matter comes before us on appeal brought by the Department of Health and Hospitals, Eastern Louisiana Mental Health System (“ELMHS”), from an adverse final decision of the Louisiana State Civil Service Commission (“the Commission”) that effectively reinstated an ELMHS employee to' her former position and awarded her back pay and attorney fees.
FACTS AND PROCEDURAL HISTORY
In 2014, Loralane Wiley was employed and serving, with permanent status, as a Licensed Practical Nurse 3 (“LPN-3”) at the ELMHS campus near Jackson, Louisiana. Two incidents, involving two different patients at the ELMHS campus, led ELMHS to take disciplinary action against Ms. Wiley. By letter dated November 20, 2014, Ms. Wiley was notified that she was being dismissed from her long-time employment with ELMHS for: (1) alleged abuse and neglect of Patient 113, who was *1087 missing from the Secure Forensic Facility-Ward 1 (“SFF-1”), where Ms. Wiley was assigned to work on- May 20, 2014; and (2) inappropriate and unprofessional conduct during an interaction with another one of the SFF-1 patients, Patient 170, on August 3, 2014, and during a subsequent staff meeting concerning Patient 170 on August 12, 2014.[2] In further support of the severity of the disciplinary action of dismissal, ELMHS additionally referred to a prior written reprimand in 2002 and three prior disciplinary actions taken against Ms. Wiley, spanning from 1992 to 2011.,
On December 10, 2014, Ms. Wiley appealed her dismissal to the Commission, denying ELMHS’s allegations and asserting that the disciplinary action of dismissal was too severe considering that SFF-1 was understaffed 'on May 20, 2014, that she was the only LPN on duty at the time, and that she was undisputedly performing a Ltask that required an LPN when Patient 113 went missing. Ms. Wiley also contends that she was professional in her dealings with Patient 170, and she merely expressed her opinion as to Patient 170’s needs at the staff meeting in August 2014, considering the patient’s history of infractions and noncompliance with ELMHS staff and policies. Ms. Wiley requested reinstatement to her position as LPN-3, along with back wages, interest, and attorney fees.
The Commission appointed a referee to hear the case. After public hearings were held on March 4, 2015, and May 14, 2015, the referee rendered a decision on July 13, 2015, in favor of Ms. Wiley, granting her appeal, reversing her termination, and awarding back wages with interest, along with attorney fees of $1,500.00. ELMHS appealed the referee’s decision to the Commission,: but that appeal was denied on September 2, 2015. Accordingly, the decision of the Commission’s appointed referee became the final decision of the Commission.[3] ELMHS then timely filed the instant appeal, essentially arguing that the Commission erred in finding that ELMHS had failed to prove cause for Ms. Wiley’s dismissal based on the incidents .with Patients 113 and 170.
DISCUSSION
The Commission has the exclusive power and authority to hear and decidé all removal and disciplinary cases, and it may appoint a referee to hear and decide such cases. La. Const, art. X, § 12(A). However, decisions of referees are subject to review by the Commission on any question of law or fact, which may be followed by an appeal of the Commission’s final decision concerning any question of law or fact by the court of appeal wherein the Commission is located. La. Const, art. X, § 12(A).
|4In civil service disciplinary cases, decisions of the Commission and its referees are subject to the same standard of review as a decision of a district court. Harrell v. Dept. of Health and Hospitals, Office for Citizens with Developmental Disabilities, Pinecrest Supports and Services Center, 2010-0281 (La.App. 1 Cir. 9/10/10), 48 So.3d 297, 301, writ not considered, 2010-2310, (La. 12/10/10), 51 So.3d 715. A reviewing court should not disturb the factual findings made by a Commission referee in the absence of manifest error. Walters v. Dept. of Police of City of New Orleans, 454 So.2d 106, 113 (La.1984). It is the province of the Commission referee to *1088 determine the weight to be given to evidence in an administrative hearing. Harrell, 48 So.3d at 301. Further, great weight should be given to factual determinations of the Commission or a referee. Marcantel v. Dept. of Transportation and Development, 590 So.2d 1253, 1255 (La.App. 1st Cir.1991). An appellate court should not disturb reasonable evaluations of credibility and reasonable inferences of fact where there is conflict in the testimony. Also, when there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous • or clearly wrong. Wopara v. State Employees’ Group Benefits Program, 2002-2641 (La.App. 1 Cir. 7/2/03), 859 So.2d 67, 69-70.
Employees who have gained permanent status in the classified state civil service may be disciplined only for cause expressed in writing. La. Const. art. X, § 8(A); Harrell, 48 So.3d at 301. A determination of the existence of legal cause consists, at least in part, of a factual finding that certain behavior occurred. Marcantel, 590 So.2d at 1255. “Cause” exists when the employee’s conduct is detrimental to the efficient and orderly operation of the public service that employed her. See Bannister v. Dept. of Streets, 95-0404 (La. 1/16/96), 666 So.2d 641, 647. An appellate court should not reverse the Commission’s determination of the existence or non-existence of cause for a disciplinary action unless the decision is [¡¡arbitrary, capricious, or an abuse of discretion. Harrell, 48 So.3d at 301. An administrative agency’s conclusion is “capricious” when it has no substantial evidence to support it; it is “arbitrar/’ when the evidence has been disregarded or not given the proper weight. Marsellus v. Dept. of Public Safety and Corrections, 2004-0860 (La.App. 1 Cir. 9/23/05), 923 So.2d 656, 661. Thus, a disciplinary action against a civil service employee will be deemed arbitrary and capricious if there is no real and substantial relationship between the improper conduct and the efficient operation of the public service. See Bannister, 666 So.2d at 647.
In dismissing Ms. Wiley from her position as an LPN-3, ELMHS asserted that she had abused and neglected two patients by: (1) allowing and failing to notice that Patient 113 had completely left the secured area of SFF-1 and eloped off of the ELMHS campus; and (2) engaging in inappropriate and unprofessional interactions concerning Patient 170. ELMHS had the burden of proving, by a preponderance of the evidence, that the complained of activity actually occurred, and that such activity bore a real and substantial relationship to the efficient operation of ELMHS’s public service that included the safe care and proper treatment of its patients. See Harrell, 48 So.3d at 301. A preponderance of the evidence means evidence, which is of greater weight than that which is offered in opposition thereto. Proof is sufficient to constitute a preponderance when, taken as a whole, it shows the fact of causation sought to be proved is more probable than not. Brown v. Dept. of Health and Hospitals Eastern Louisiana Mental Health System, 2004-2348 (La.App. 1 Cir. 11/4/05), 917 So.2d 522, 527, writ denied, 2006-0178 (La. 4/24/06), 926 So.2d 545.
As for the first incident, Ms. Wiley was alleged to have allowed Patient 113 to “elope” from ELMHS and failed to report him missing. The Commission referee concluded that ELMHS proved that Patient 113 was missing for approximately one hour on May 20, 2014, and that Ms. Wiley did not know the patient was gone until he was returned to the facility by local law enforcement. ELMHS contends thosel ⅜ factual conclusions alone support a finding *1089 that Ms. Wiley failed to provide a safe environment for Patient 113 and that Patient 113 was placed in danger by Ms. Wiley’s failure to supervise. However, the referee also relied on the testimony of Ms. Wiley to conclude that during the time that Patient 113 was missing, Ms. Wiley was performing a task that only she could perform since she was the only LPN assigned to SFF-1 on that particular day. Further, the referee concluded that other employees (a Psychiatric Aide and a Corrections Guard Therapeutic), who had the responsibility for counting and monitoring the whereabouts of patients in SFF-1 that day, similarly did not notice that Patient 113 was missing. After listening to contradictory testimony, the referee concluded:
[T]he security situation at the SFF cannot be described as strict: thirty to forty patients and staff members going in and out of its locked gate every day, more than twenty staff members having keys to the gate, and a nearby unsecured ‘old’ front gate with easy access to the town of Jackson.
Under the circumstances presented here, I do not find that [ELMHS] proved Ms. Wiley was at fault for Patient # 113’s elopement or her failure to report it. [ELMHS] has therefore failed to prove cause for discipline against Ms. Wiley with this charge.
We reiterate that the trier of fact is granted a great deal of discretion in matters of credibility of witnesses. This is so because the trier of fact is able to observe firsthand the demeanor and character of the witnesses, while this court is limited to a review of the cold record. Therefore, unless the factual findings are clearly wrong or manifestly erroneous, we will not disturb the credibility determinations of the Commission referee. See Young v. Dept. of Health and Human Resources, 405 So.2d 1209, 1212 (La.App. 1st Cir.), writ denied, 407 So.2d 749 (La.1981). Accordingly, keeping these principles in mind and based on our review of the record, we find no error in the referee’s determination that ELMHS did not prove by a preponderance of the evidence that Ms. Wiley was at fault for Patient 113’s approximate one-hour elopement on May 20, 2014. Consequently, the referee and |7the Commission correctly determined that there was no cause for the harsh discipline of dismissal connected with the first incident.
As for the second incident involving Patient 170, Ms. Wiley was alleged to have engaged in inappropriate and unprofessional conduct while interacting with Patient 170 on August 3, 2014, concerning the patient’s repeated requests to change job assignments, and how Ms. Wiley’s responses to the patient may have contributed to the patient’s agitation later that day. The record reflects that Patient 170 was extremely manipulative with anti-social personality traits, and that he was a diagnosed paranoid schizophrenic who was at ELMHS due to a judicial commitment. Ms. Wiley and others testified that Ms. Wiley calmly explained to Patient 170 that she could not change his job assignment, and she further advised Patient 170 regarding the consequences of his actions if he refused to work that he could be transferred to a more restrictive ward).
There was conflicting testimony as to what Ms. Wiley’s appropriate response should have been to Patient 170 under these circumstances, but the Commission referee found the testimony of Lawrence Gromley, the Rehabilitation Evaluator who made the patients’ job assignments, to be “more credible” than that of Dr. Anita Snow, a Forensic Psychiatrist on Patient 170’s treatment team. Dr. Snow indicated that Ms. Wiley’s comments to Patient 170 were inappropriate and threatening. However, Mr. Gromley testified that it is ap *1090 propriate for a nurse to explain to a patient the consequences of his actions if he refuses to-work, and that it is necessary to be stem with Patient 170 to get a message across. The referee concluded that “Ms. Wiley’s behavior toward Patient # 170 on August 3, 2014, was not inappropriate, unprofessional, or abusive.” The referee further found a “lack of clarity in the evidence” regarding Ms. Wiley’s comments at an August 12, 2014 staff meeting concerning Patient 170’s disruptive behavior and the need for him to be moved to a more restrictive ward.
| ¡Again, under the principles that govern our review of the Commission's decision, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. When there are two permissible views of evidence, the factfin-der’s choice cannot be manifestly erroneous. See Wopara, 859 So.2d at 69-70. Herein, the Commission referee clearly found Ms. Wiley’s and Mr. Gromley’s explanations concerning Ms. Wiley’s encounter with Patient 170 to be credible, and made the decision to credit their testimony over others. Under the precepts set forth above, we find no error in the referee’s decision.
Consequently, on the record before us, we do not find the Commission’s final decision reinstating Ms. Wiley to her employment, retroactive to the date of her termination, to be arbitrary and capricious, nor can it be fairly characterized as an abuse of discretion. Thus, we find no merit in ELMHS’s assignments of error.
CONCLUSION
After a thorough review of the record presented on appeal, we are unable to say that a reasonable factual basis did not exist for the findings of the Commission referee or that the findings were clearly wrong. As a result, we are unable to conclude that the Commission was arbitrary or capricious or abused its discretion in ultimately finding that ELMHS failed to prove cause for subjecting its employee, Loralane Wiley, to dismissal. Accordingly, we affirm the final decision of the Louisiana State Civil Service Commission in all respects. All costs of this appeal, in the amount of $1,572.50, are assessed to the Department of Health and Hospitals, Eastern Louisiana Mental Health System.
AFFIRMED.

. For privacy purposes, the patients at ELMHS are identified only by a number rather than' a name.

. If the Commission denies an application for review of a referee’s decision, the decision of the referee becomes the final decision of the Commission as of the date the application is denied. See La. Const, art. X, § 12(A).