CRAIN, J.
Tierra Williams appeals a decision of the Louisiana Civil Service Commission upholding the termination of her employment. We affirm.
FACTS AND PROCEDURAL HISTORY
Williams was employed by the Louisiana Department of Health, Office for Citizens with Developmental Disabilities, as a residential services specialist at Pinecrest Supports and Services Center, a residential facility for disabled individuals. During the course of her employment, Williams was involved in a physical altercation with a co-employee, Brenda Green. After an investigation, the Department determined Williams' conduct violated Pinecrest's workplace violence policy and constituted neglect in the care of the resident under her supervision. Based on those findings, the Department dismissed Williams from her employment.
Williams appealed the Department's decision to the Civil Service Commission. At a hearing before a referee, the evidence established the altercation occurred while a group of residents were walking to a park under the supervision and care of four Department employees: Sandra Lowery, Zelda Hinkston, Green, and Williams. Each employee was assigned to a particular resident or group of residents. Williams was assigned to a "one-on-one" resident, which, for this particular resident, meant Williams was to remain within "arm's length" of the resident at all times.
Hinkston, who was walking in the front of the group, heard Williams and Green arguing after Williams told Green to walk behind, rather than in front of, the residents under Green's care. Hinkston turned briefly and told them to quit arguing, then resumed walking to the park with her residents. Hinkston did not see a physical altercation but testified Williams was not within arm's length of her resident when Hinkston turned around.
Lowry was third in line among the staff, walking immediately behind Williams and ahead of Green, who was in the back of the group. According to Lowry, after Williams and Green started arguing, Williams left the resident under her care and walked to the back of the group and confronted Green. Lowry heard Williams threaten to hit Green, and Green said, "Stop, don't push me." When Lowry turned around, she saw Williams "swinging" at Green, who had her arms up in a *929 defensive posture. Lowry never saw Green try to hit Williams.
Green testified she and Williams exchanged words after Williams told her to stay at the back with her residents. Green informed Williams she was with her group and Williams should mind the resident under her care, which prompted Williams to threaten to "come back there and hit you in your ... face." Williams left her resident, walked to the back of the group, and began hitting Green in the face. Green denied provoking Williams in any manner or swinging back.
Williams acknowledged telling Green to walk closer to her residents but denied confronting her. Instead, according to Williams, Green was the aggressor and began cursing Williams and waving her hands in Williams' face. When Green touched Williams' face, Williams pushed her hands back. Green then pulled Williams off the sidewalk and into an adjacent parking lot. Williams denied touching Green and said she acted only in self-defense. Williams testified the only time she was not within arm's length of her resident was when Green pulled her into the parking lot.
In an effort to bolster her credibility, Williams presented testimony from a polygraph examiner, retained by Williams, who questioned her about the altercation during a polygraph examination. In the examiner's opinion, Williams gave truthful answers when she denied starting the altercation or leaving her resident. The examiner acknowledged that a polygraph can be "beat[en]" by using "counter measures," and he was unaware of the success rate of the examinations. The Department stipulated the examiner's opinion could "go to the weight of the evidence."
The parties introduced several exhibits, including Pinecrest's written policy for workplace violence, which, in relevant part, defines "workplace violence" as "any act of violence, threat of physical violence ... or other threatening, disruptive behavior that is related to the workplace (or away from the workplace, if it relates to the job)." Amanda Pittman, the associate administrator for Pinecrest, confirmed the center has a "zero-tolerance policy" for workplace violence.
The referee concluded the Department proved cause for disciplining Williams, namely a failure to provide continuous one-on-one supervision for her resident and violation of Pinecrest's workplace violence policy, and that the discipline imposed, dismissal from employment, is commensurate with the offenses. Recognizing the conflicting accounts of the incident, the referee explained the basis for her decision as follows:
I observed Ms. Williams, Ms. Green, Ms. Lowery and Ms. Hinkston and listened to their testimony. I found the testimony of Ms. Williams and Ms. Green to both be self-serving and give little credence to either of them. Ms. Lowery and Ms. Hinkston were eye-witness to the incident. Their testimony was straightforward, truthful and I determine their version of the events to be the most credible.
Williams filed an application for review of the referee's decision, which the Commission denied, making the referee's decision the final decision of the Commission. See La. Const. art. X, § 12 (A); Civil Service Rule 13.36(g). On appeal, Williams asserts the decision is manifestly erroneous, and the referee erred as a matter of law in discounting the results of the polygraph examination.
DISCUSSION
A classified employee with permanent status may be disciplined only for *930 cause expressed in writing. See La. Const. art. X, § 8 (A). The physical assault of a co-employee is sufficient cause for dismissal of the offending classified employee. See Ford v. Louisiana State University Health Sciences Center , 10-1434, 2011 WL 856418 p.1, (La. App. 1 Cir. 2/11/11) ; Sutherland v. Board of Commissioners , 459 So.2d 1282, 1283 (La. App. 1 Cir. 1984) ; Davis v. Recreation Department , 12-1273 (La. App. 4 Cir. 1/30/13), 107 So.3d 1254, 1261 ; Williams v. Sewerage and Water Board , 04-0025 (La. App. 4 Cir. 5/19/04), 876 So.2d 117, 122. The appointing authority bears the burden of proving such conduct by a preponderance of the evidence, meaning the evidence as a whole must show the fact sought to be proven as more probable than not. Cole v. Division of Administration , 14-0936 (La. App. 1 Cir. 1/26/15), 170 So.3d 180, 184 ; Paulin v. Department of Health and Hospitals , 13-1916 (La. App. 1 Cir. 6/6/14), 146 So.3d 264, 268.
The factual conclusions of the referee and Commission are subject to the manifest error standard of review, meaning those conclusions will be reversed only if the appellate court determines they have no reasonable basis in the record and are clearly wrong. See Cole , 170 So.3d at 184 ; Paulin , 146 So.3d at 268. In evaluating the Commission's determination that the disciplinary action is based on legal cause and is commensurate with the infraction, the court should not modify the Commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. McGee v. Department of Transportation and Development , 99-2628 (La. App. 1 Cir. 12/22/00), 774 So.2d 1280, 1282, writ denied , 01-0232 (La. 3/23/01), 788 So.2d 432. Each case must be decided on its own facts. Reviewing courts should not second guess the appointing authority's decision, but only intervene when decisions are arbitrary and capricious or characterized by an abuse of discretion. Cole , 170 So.3d 184-85 ; Paulin , 146 So.3d at 268.
Williams relies heavily on the results of the polygraph examination, essentially arguing the examiner's opinion is determinative of the truthfulness of her account of the incident. Asserting the referee legally erred in discounting the results of the polygraph, Williams points to the following statements in the referee's decision:
A polygraph is strictly a tool to aid in an investigation or to help the trier of fact determine the truth. The opinion of a polygraph examiner has no greater weight than any other witness, and in fact may have less weight, since the polygraph examiner was not present for the event, nor did he speak with or observe the testimony of any of the other witnesses or parties to this incident.
While polygraph evidence may be admissible in administrative proceedings under certain circumstances, the factfinder determines the weight, if any, to be given that evidence. See Evans v. DeRidder Municipal Fire , 01-2466 (La. 4/3/02), 815 So.2d 61, 68, cert. denied, 537 U.S. 1108, 123 S.Ct. 884, 154 L.Ed.2d 779 (2003) ; Harrell v. Department of Health and Hospitals, Office for Citizens with Developmental Disabilities, Pinecrest Supports and Services Center , 10-0281 (La. App. 1 Cir. 9/10/10), 48 So.3d 297, 306. When admitted into evidence, a polygraph test is "merely a tool to assist" the factfinder and, like any other expert evidence, is not binding. See Harrell , 48 So.3d at 306. In this case, for the reasons provided, the referee was not swayed by the polygraph evidence. Having reviewed the examiner's testimony and the test results, we find no abuse of discretion in the referee's assessment of that evidence. See Harrell , 48 So.3d at 306.
*931 The referee's decision was based on the testimony of fact witnesses, particularly the two disinterested witnesses, Lowery and Hinkston. While Williams claimed she acted only in self-defense, her testimony was contradicted by Lowery, who was walking between Williams and Green when the two began to argue. Lowery testified Williams left her resident and walked to the back of the group where she confronted, threatened, and physically attacked Green. Lowery's testimony was corroborated by Green and to a lesser extent by Hinkston, although from her vantage point at the front of the group, Hinkston did not hear all of the verbal exchanges and did not see the physical altercation. Lowery, Hinkston, and Green likewise testified that during the incident, Williams did not remain within arm's length of the resident under her care.
The referee, as the trier of fact, is granted a great deal of discretion in matters of credibility of witnesses. Wiley v. Department of Health and Hospitals, 15-1984 (La. App. 1 Cir. 9/16/16), 203 So.3d 1085, 1089. The referee is able to observe firsthand the demeanor and character of the witnesses, while this court is limited to a review of the cold record. Wiley , 203 So.3d at 1089. Therefore, unless the factual findings are clearly wrong or manifestly erroneous, we will not disturb the referee's credibility determinations. Wiley , 203 So.3d at 1089. Based upon our review of the evidence, the referee was not manifestly erroneous or clearly wrong in concluding Williams instigated the altercation and neglected the resident under her care. The record contains a reasonable basis for those factual determinations. We further find the penalty imposed, dismissal from her employment, is commensurate with the offenses. See Ford , 2011 WL 856418 at p.1 ; Sutherland , 459 So.2d at 1283 ; Davis , 107 So.3d at 1261 ; Williams , 876 So.2d at 122. The appellant's assignments of error are without merit.
CONCLUSION
We affirm the decision of the referee and the Commission's denial of the application for review. All costs of this appeal are assessed to Tierra Williams.
AFFIRMED.