# NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 0914

TROY ROGERS

VERSUS

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS,
ELAYN HUNT CORRECTIONAL CENTER

Judgment Rendered: **MAR 0 7 2022**

* * * * * * *

On Appeal from the
Decision of the State Civil Service Commission
Number S-18291

Honorable David Duplantier, Chairman
D. Scott Hughes, Vice-Chairman
G. Lee Griffin, Ron Carrere, John McLure, C. Pete Fremin,
and Jo Ann Nixon, Members

Byron P. Decoteau, Jr., Director
Department of State Civil Service

* * * * * * *

| | |
|---|---|
| Demi L. Vorise<br>Port Allen, Louisiana | Attorney for Plaintiff/Appellant,<br>Troy Rogers |
| Robert Rochester, Jr.<br>St. Gabriel, Louisiana | Attorney for Defendant/Appellee,<br>Department of Public Safety and<br>Corrections, Elayn Hunt Correctional<br>Center |
| Sherri L. Gregoire<br>Baton Rouge, Louisiana | Attorney for Defendant/Appellee,<br>Byron P. Decoteau, Jr., Director,<br>Department of State Civil Service and<br>Louisiana State Civil Service<br>Commission |

* * * * * * *

**BEFORE: WHIPPLE, CJ., PENZATO, AND HESTER, JJ.**

**PENZATO, J.**

Troy Rogers appeals an order of the Louisiana Civil Service Commission (Commission) denying his application for review, thereby rendering the decision of the Referee the final decision of the Commission.[1] The Referee's decision upheld the termination of Rogers' employment with the Louisiana Department of Public Safety and Corrections (DPSC). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On January 9, 2017, Rogers was employed by DPSC as a Corrections Lieutenant with permanent status at Elayn Hunt Correctional Center (EHCC). On that date, he was the designated team leader of a cell extraction team deployed to remove two offenders from their cell. The members of the team were Rogers, Master Sergeant Adrian Alamodovar, Captain Charles Philson, Lieutenant Andre Riley, Lieutenant Michael Collins, and Lieutenant Eric Norwood. Allegations of physical abuse of the offenders were brought forth to the EHCC administrative staff, and an investigation was initiated. Two members of the extraction team admitted to assaulting one of the offenders, John Harold, after he was restrained, under control, and offering no resistance to them. Video of the incident showed Rogers standing outside of Harold's cell watching and not attempting to intercede. Rogers was interviewed and admitted to standing outside of Harold's cell, but denied observing use of excessive force. Rogers was unable to explain why it took approximately eight minutes to remove Harold from his cell after it only took one and a half minutes to remove the other offender and offered no reasonable explanation of what was going on inside the cell. DPSC determined that Rogers failed to accurately describe the events of the January 9, 2017 incident in an Unusual Occurrence Report (UOR) prepared after the extraction, and was therefore in violation of Rule 10 of the Corrections Services Employee Manual, "Falsifying

---

[1] See La. Const. art. 10, § 12(A); Civil Service Rule 13.36(g).

2

Documents or Making False Statements."[2] DPSC also determined that Rogers violated Rule 13(d) of the Corrections Services Employee Manual, "Malfeasance-Aggravated," by failing to report the abuse.[3] DPSC issued a letter dated March 23, 2017, advising Rogers that by his actions, he compromised his professional duties and responsibilities and also compromised the security of the institution. As a result of these major infractions, Rogers was terminated from his employment effective April 1, 2017.

On April 19, 2017, Rogers appealed his termination to the Commission, denying that he witnessed any assault or abuse of Harold. Due to the allegations of offender abuse and criminal investigations by multiple law enforcement agencies, the Referee placed Rogers' appeal on hold effective July 11, 2017. The appeal was removed from hold status, and a public hearing was conducted on November 20, 2020. The Referee issued a decision finding by a preponderance of the evidence that Rogers witnessed excessive force and offender abuse and failed to report it. The Referee further found that the discipline imposed, dismissal, was warranted. Rogers filed an application for review of the Referee's decision, which the Commission denied, making the Referee's decision the final decision of the Commission. Rogers now appeals the Commission's decision.

---

[2] Rule 10 provides:

> Knowingly making false statements or deliberately omitting important facts on official reports or documents or in other work-related circumstances is forbidden. This includes, but is not limited to, certification of illness/doctor's excuse, disciplinary reports, incident reports, log books, investigation reports, unusual occurrence reports, accident reports, employee violation reports, time and attendance records, travel expense records, accounting records and job applications, as well as knowingly making false statements or deliberately omitting important facts to any person conducting an investigation for the Department or for another state, local or federal agency.

[3] Rule 13(d) provides:
> No employee shall fail to report, at the first opportunity, a violation of rules and regulations. (See Part V "The Violation Reporting Process" for specific guidance regarding this rule.)

3

## ASSIGNMENTS OF ERROR

Rogers asserts the following assignments of error:

1. The Commission/Referee erred in finding legal cause to warrant termination;

2. The Commission/Referee's decision was based on improper evidence, hearsay, and unsupported by the evidence and testimony offered at the hearing;

3. The discretionary powers of the Commission/Referee were irrational and arbitrarily and/or capriciously applied toward Rogers.

## LAW AND DISCUSSION

A classified employee with permanent status may be disciplined only for cause expressed in writing. See La. Const. art. 10, § 8(A). Cause for dismissal includes conduct prejudicial to the public service involved or detrimental to its efficient operation. *Cole v. Division of Administration*, 2014-0936 (La. App. 1 Cir. 1/26/15), 170 So. 3d 180, 184, writ not considered, 2015-0401 (La. 5/1/15), 169 So. 3d 367. The appointing authority bears the burden of proving such conduct by a preponderance of the evidence, meaning the evidence as a whole must show the fact sought to be proven as more probable than not. *Williams v. Louisiana Department of Health, Office of Citizens with Developmental Disabilities, Pinecrest Supports and Services Center*, 2017-0772 (La. App. 1 Cir. 12/21/17), 240 So. 3d 927, 930.

In civil service disciplinary cases, the factual conclusions of the Referee and Commission are subject to the manifest error standard of review, meaning that the factual determinations will be reversed only if the appellate court finds that a reasonable basis does not exist for the Commission's finding and the record establishes the finding is clearly wrong. *Martin v. Department of Revenue*, 2018-1167 (La. App. 1 Cir. 7/31/19), 2019 WL 3451056, *4, writ denied, 2019-01558

4

(La. 11/25/19), 283 So. 3d 496. Whether disciplinary action imposed is commensurate with the dereliction is a determination within the discretion of the Commission and one that cannot be overturned absent an abuse of discretion. *Brown v. Department of Health & Hospitals Eastern Louisiana Mental Health System*, 2004-2348 (La. App. 1 Cir. 11/4/05), 917 So. 2d 522, 531, writ denied, 2006-0178 (La. 4/24/06), 926 So. 2d 545. In evaluating the Commission's determination that the disciplinary action is based on legal cause and is commensurate with the infraction, the court should not modify the Commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. *Williams*, 240 So. 3d at 930. An arbitrary conclusion is one that disregards evidence or the proper weight thereof; a capricious conclusion is one without substantial evidence to support it or contrary to substantiated competent evidence. *Martin*, 2019 WL 3451056, at *4. Each case must be decided on its own facts. Reviewing courts should not second guess the appointing authority's decision, but only intervene when decisions are arbitrary and capricious or characterized by an abuse of discretion. *Cole*, 170 So. 3d at 184-85.

In administrative hearings, the usual rules of evidence need not apply, and thus, hearsay may be admitted. *Board of Ethics Matter of Monsour*, 2016-1159 (La. App. 1 Cir. 6/21/17), 233 So. 3d 625, 629, writ granted, 2017-1274 (La. 12/5/17), 231 So. 3d 623, affirmed, 2017-1274 (La. 5/1/18), 249 So. 3d 808. Nevertheless, the findings of the agency must be supported by competent evidence. Factual findings cannot be based solely on incompetent evidence. *Superior Bar & Grill, Inc. v. State through the Department of Public Safety and Corrections*, 94-1879 (La. App. 1 Cir. 5/5/95), 655 So. 2d 468, 470.

In his first two assignments of error, Rogers contends the Commission/Referee erred in finding that the appointing authority had sufficient legal cause to warrant termination when evidence was based upon improper

evidence, hearsay, and unsupported by the evidence and testimony offered at the hearing.

At the November 20, 2020 hearing, the Referee took judicial notice of guilty plea agreements from four members of the cell extraction team entered in the United States District Court, Middle District of Louisiana. Alamodovar[4] pled guilty to deprivation of rights under color of law resulting in bodily injury, in violation of 18 U.S.C. § 242. In the factual basis of the plea, Alamodovar stipulated that when he entered Harold's cell, Harold was initially combative and force was used to subdue and restrain him in handcuffs. Alamodovar further stipulated that he kicked Harold without legal justification after Harold was restrained with handcuffs and offering no resistance; and he was aware that under EHCC policy and the law, he was not permitted to use force on a non-resisting, restrained inmate, but chose to do so anyway out of anger. Alamodovar stipulated that he observed other guards striking Harold without legal justification and failed to intervene to stop them, despite knowing that he had both an opportunity and duty to intervene. Norwood, Philson, and Collins each pled guilty to deprivation of rights under color of law, in violation of 18 U.S.C. § 242. Norwood stipulated in the factual basis of the plea that he struck Harold repeatedly without legal justification after Harold was restrained and offering no resistance. Norwood further stipulated that he observed other guards striking Harold without legal justification, but failed to intervene to stop them. Philson stipulated in the factual basis of the plea that he assisted in placing Harold in handcuffs and leg shackles, and as he completed the application of the restraints, he observed other guards striking Harold without legal justification, but failed to intervene to stop them.

---

[4] In the plea agreement, his name is spelled "Almodovar." We use "Alamodovar," as that is how it is spelled in the investigative report and the Referee's decision.

Collins stipulated in the factual basis of the plea that Harold was placed in handcuffs and leg shackles, and as he searched Harold's cell, he became aware that other cell extraction team members were striking Harold without legal justification. Collins stipulated that he failed to intervene to stop them, despite knowing that he had both an opportunity and duty to intervene.

DPSC introduced and relied upon the report prepared in connection with the excessive use of force investigation into the events of January 9, 2017. The report summarized the interview of a fifth member of the cell extraction team, Riley. According to the report, Riley entered the cell as part of the cell extraction team, and he and the other officers subdued the offenders. After observing that both of the offenders had stopped resisting and were under control, Riley left the area because he thought the remaining officers could handle restraining and removing the offenders. Riley observed the first offender brought to the lobby, and after several minutes, wondered what was taking so long to bring out Harold. Riley returned to the cell and saw Rogers standing at the door of the cell, and Alamodovar, Collins, and Philson inside the cell beating and kicking Harold, who was fully restrained and lying face down on the floor offering no resistance. According to the report, after a period of almost four minutes witnessing the abuse, which was not continuous but was repeated multiple times, Riley told the three officers to stop what they were doing and remove Harold. Riley stated that Rogers never told the officers to stop striking Harold or attempted to intercede.

At the November 20, 2020 hearing, DPSC also introduced videotaped interviews of the members of the cell extraction team, as well as a video recording from the tier during the cell extraction. Rogers was the only member of the cell extraction team to testify at the November 20, 2020 hearing. Following a review of the record, the testimony, and the evidence presented, the Referee made the following findings of fact:

7

1. Troy Rogers was employed by DPSC as a Corrections Lieutenant. He served with permanent status.

2. On January 9, 2017, a cell extraction team was deployed to remove two (2) offenders from their cell. The members of the team were Lieutenant Troy Rogers, Master Sergeant Adrian Alamodovar, Captain Charles Philson, Lieutenant Andre Riley, Lieutenant Michael Collins, and Lieutenant Eric Norwood. Mr. Rogers was designated as the team leader. Rogers and Mr. Philson entered the cell and assisted with extracting the first offender. They escorted that offender off the tier.

3. After several minutes, Mr. Rogers returned to the cell to see why the second offender had not been removed. He stood in the hallway directly in front of the cell door for approximately four minutes. During this time, there were several members of the cell extraction team in the cell with the remaining offender. They were punching and kicking him even though he was in restraints and offering no resistance. Mr. Rogers did not say or do anything to stop the abuse. Instead, after a few minutes, he retrieved the capture shield from the cell and left the tier.

4. Mr. Rogers prepared a handwritten Unusual Occurrence Report (UOR) shortly after the extraction took place. The report fails to mention the excessive force used on the second offender. The UOR was admitted into evidence during the hearing. The UOR was typed-not handwritten. The signature line is blank.

5. All of the members of the extraction team, Mr. Verret, and Sergeant Tyler Suhm, who treated the offender in the ATU, were interviewed at least once by DPSC investigators and law enforcement. These interviews were videotaped. Copies of the videos were admitted into evidence during the hearing.

6. Mr. Rogers repeatedly denied witnessing any excessive force or abuse during the removal of the second offender from the cell.

7. During his testimony, Mr. Rogers denied seeing or hearing any abuse.

The Referee considered the UOR, which formed the basis for the allegation that Rogers violated Rule 10 of the Corrections Services Employee Manual by falsifying a document or making a false statement. Rogers admitted in his testimony at the hearing that the UOR did not contain any reference to excessive force, and maintained that he did not witness any abuse. The Referee did not find Rogers' testimony credible in light of the video recording from the tier, the statements of the members of the cell extraction team, and Rogers' own videotaped

8

interviews. The Referee noted that Rogers stood at the door to the cell for approximately four minutes after he returned to the tier. During this time, according to the evidence, Harold was being punched and kicked by at least three members of the cell extraction team. Rogers' UOR made no mention of these facts. The Referee found that Rogers compounded his false statements during his interviews with investigators even when confronted with the video recordings.

The Referee next considered the allegation that Rogers violated Rule 13(d) of the Corrections Services Employee Manual by failing to report the abuse. The Referee noted that Rogers was the only cell extraction team member to testify at the November 20, 2020 hearing and that he denied witnessing offender abuse during Harold's extraction from the cell. The Referee recognized that the statements made by the extraction team were hearsay, and while admissible, must be corroborated by competent evidence in order to form the basis of a finding of fact. See *Superior Bar & Grill, Inc.*, 655 So. 2d at 470. The Referee found that the hearsay evidence admitted at the hearing was corroborated by the video of the tier recorded during the extraction. The Referee observed that the video showed Rogers escorting the first offender from the tier after he was removed from the cell, then returning a few minutes later and standing in the doorway to the cell where other members of the cell extraction team were abusing Harold. The video showed Rogers remaining at the doorway for approximately four minutes before picking up a crash shield and walking out of camera range. The Referee found that the video, in conjunction with the statements of the other members of the cell extraction team, the videotaped interviews, and the investigative report, established by a preponderance of the evidence that Rogers witnessed excessive force and offender abuse and failed to report it.

The Referee found that Rogers' dismissal was warranted given the nature of the events that took place and the severity of the actions. The Referee concluded

9

that Rogers' failure to intervene and stop the abuse, coupled with his refusal to take responsibility for the actions of the cell extraction team as their leader, supported his dismissal.

After reviewing the record in this matter, we find that the Referee's credibility determinations and consequential findings of fact are reasonable. The Referee relied upon video footage that showed Rogers outside Harold's cell for four minutes. In Riley's interview contained in the investigative report, Riley reported that during the time Rogers was standing at the door of the cell, Alamodovar, Collins, and Philson were inside the cell beating and kicking Harold, who was fully restrained and lying face down on the floor offering no resistance. We find no error in the Referee's conclusion that Rogers witnessed excessive force and offender abuse, which he failed to mention in his UOR and failed to report, violations of the Corrections Services Employee Manual rules.

Moreover, we do not find that the Referee abused its discretion in determining that termination was commensurate with Rogers' actions. The Corrections Services Employee Manual, introduced into evidence at the November 20, 2020 hearing, provides that dismissal is an available disciplinary penalty for all rule infractions.

A penal institution is a quasi-military installation that necessarily operates under an exacting set of rules and regulations. *Layton v. Department of Public Safety and Corrections*, 2015-1370 (La. App. 1 Cir. 6/2/16), 2016 WL 3134532, *4, writ not considered, 2016-1955 (La. 12/16/16), 211 So. 3d 1165. Keeping order and maintaining security within the institution are fundamental to its efficient operation. *Id.*

In *Layton*, 2016 WL 3134532, this court upheld the termination of a corrections sergeant at Louisiana State Penitentiary for giving a cigarette to an offender; calling a co-employee a "whore" in front of fellow employees; pointing

10

her finger in the co-employee's face; accusing the co-employee of telling a superior officer that she was "dealing" with an offender; and pushing the co-employee on her shoulder, in violation of Louisiana State Penitentiary Rules. See also *Ravencraft v. Department of Public Safety and Corrections*, 608 So. 2d 1051 (La. App. 1 Cir.), writ denied, 609 So. 2d 829 (La. 1992), which upheld the termination of a corrections sergeant for violation of a Corrections Services Employee Rule requiring that no employee may report for or be on duty when the odor or effects of alcohol or other intoxicants are noticeable.

Rogers' failure to intercede to stop abuse of an offender, failure to report abuse, and failure to report abuse truthfully violated two Corrections Services Employee Manual rules. The violation of these rules, particularly in light of the severity of the violation he failed to report, was detrimental to the efficient operation of the institution. Therefore, we find no error in the Referee's decision to uphold the sanction of dismissal imposed by DPSC.

In his final assignment of error, Rogers contends the discretionary powers of the Commission/Referee were irrational and arbitrarily and/or capriciously applied toward him because his case is "factually identical" to that of Jarod Verret, whose termination was reversed. According to the investigative report, Verret was the colonel over the EHCC unit where the January 9, 2017 event occurred. According to the report, after Harold was removed from his cell, Verret drove a van transporting Harold for medical assessment and treatment at the Assessment Triage Unit (ATU). Witness statements indicated that physical abuse was being inflicted upon Harold in the van and inside the ATU, and Verret failed to stop the use of unnecessary and excessive force against Harold. Verret's case involved a different case of abuse in a different area of the prison, and was not based upon the same evidence reviewed and relied upon by the Referee in connection with Rogers' case. We find no merit to this assignment of error.

11

## CONCLUSION

For the above and foregoing reasons, the decision of the Louisiana Civil Service Commission is affirmed. All costs of this appeal are assessed to the appellant, Troy Rogers.

**AFFIRMED.**

12